United States District Court
For the Northern District of California

*E-Filed 8/4/14*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

LARRY H. VIERA,

Plaintiff,

v.

G. D. LEWIS, et al.

Defendants.
_______________________________/

No. C 12-1497 RS (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff, a state prisoner proceeding *pro se*, brought this civil rights action pursuant to 42 U.S.C. § 1983. He alleges that defendants, G.D. Lewis, G. Williams, D. Foston, C. Tileston, J.A. McKinney, D. Barneburg and S. Burris, all employees of Pelican Bay State Prison, violated his right to due process and his rights under the First and Eighth Amendments by validating him as a gang member. Defendants move for summary judgment. For the reasons stated herein, defendants' motion for summary judgment is GRANTED in favor of all defendants as to all claims.

**BACKGROUND**

The facts of this case are undisputed. Plaintiff is presently serving a sentence of sixteen years-to-life at Pelican Bay State Prison and has been housed in the Segregated

Housing Unit ("SHU") since 1996 due to his status as a validated gang associate. (Defs.' Request for Judicial Notice, Ex. A.) On April 20, 2010, plaintiff's central file was reviewed by the Institutional Gang Investigations Unit in order to determine his gang validation status. (Defs.' Mot. for Summ. J. ("MSJ"), Decl. Burris ¶ 16.) Defendant Burris, an Institutional Gang Investigator at Pelican Bay, reviewed plaintiff's file and specifically reviewed two documents that he believed were sufficient proof to re-validate plaintiff as a gang member. (*Id.*)

The first document was a "gang-related roster," which included plaintiff's first name, cell number, and street origin and was dated January 23, 2010. (*Id.* ¶ 17.) A gang roster is a list of inmates who are in good standing with a prison gang. (*Id.*) The second document was a confidential memorandum from April 17, 2007, which included the testimony of a validated gang member in 2007, who identified plaintiff as an inmate on the "up" status with the Mexican Mafia gang. (*Id.* ¶ 18.) Being on the "up" status with a gang means that an inmate is being evaluated by that gang for membership. (*Id.*) To be considered for membership, an inmate "must perform acts for the gang which further [the gang's] interests." (*Id.*)

On April 22, 2010, Burris interviewed plaintiff about the two documents. At the interview, plaintiff made a written statement but did not make any verbal comments. (*Id.* ¶ 21.) Burris then completed paperwork for the validation process, which was reviewed and signed by defendant Barneburg. (*Id.* ¶ 22.) The documentation was sent to the Special Services Unit for final approval of plaintiff's re-validation. (*Id.* ¶ 23.) On May 17, 2010, defendant Williams completed the validation process and validated plaintiff as a gang associate, with a new review date of January 14, 2016. (*Id.* ¶ 24.) This new review date was based on the most recent memo dated January 23, 2010 that successfully validated plaintiff as an active gang associate. (*Id.*) On June 22, 2010, plaintiff submitted an appeal to the prison appeals coordinator, and subsequently met with defendant McKinney to discuss the appeal on July 28, 2010. (Compl. ¶¶ 55–67.) At the interview, plaintiff handed McKinney

two questionnaires, but McKinney declined to answer them. (*Id.* ¶¶ 60–61.)

**DISCUSSION**

**I. Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

**II. Claims**

Plaintiff claims that defendants violated his right to due process and rights under the First and Eighth Amendments by validating him as a gang associate. Plaintiff also alleges that supervisors at the prison are liable for the unconstitutional actions of their subordinates.

United States District Court
For the Northern District of California

**A. Due Process**

Plaintiff alleges that defendants violated his right to due process by inadequately performing the re-validation process that confirmed plaintiff as a gang associate. Due process requires that the administrative segregation process meet minimal procedural requirements: prison officials must hold an informal hearing within a reasonable time after the prisoner is segregated; the prisoner must be informed of the reason segregation is being considered; and the prisoner must be allowed to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986) (overruled on other grounds by *Sandin v. Connor*, 515 U.S. 472, 481 (1995)). An inmate's written testimony serves as sufficient opportunity to present the inmate's views about the relevant administrative decision. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983), overruled on other grounds by *Sandin*, 515 U.S. at 483. Furthermore, the administrative determination must be made on the basis of the "some evidence" standard of *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). *Bruce v. Ylst*, 351 F.3d 1283, 1287–88 (9th Cir. 2003). Because the standard for "some evidence" is not high, this Court need only decide whether there is any evidence at all that could support the prison officials' administrative decisions. *Id.* at 1287. The evidence supporting the administrative determination, however, must bear "some indicia of reliability." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citations omitted).

Here, the undisputed record shows that prison officials met the requirements of procedural due process. On April 21, 2010, defendant Burris informed plaintiff that his central file had revealed evidence of gang activity and presented him with notice of the two items of evidence. (Compl. ¶¶ 22–23.) Plaintiff was then given one day in order to prepare his rebuttal. (*Id.* ¶ 26.) On April 22, 2010, defendant Burris returned to plaintiff's cell for an informal hearing, whereupon plaintiff presented Burris with written testimony that constituted plaintiff's rebuttal to the aforementioned evidence. (*Id.* ¶¶ 30–31.) Thus, prison officials met procedural due process requirements because plaintiff was granted a hearing, an opportunity to be heard, and was duly informed of the reason for segregation. *See Toussaint*,

801 F.2d at 1100.

In addition, prison officials used sufficient evidence to make their administrative decision. Prison officials cited two documents that supported their decision. The first document was a "gang-related roster" which included plaintiff's first name, cell number, and street origin. (MSJ, Decl. Burris ¶ 17.) A "roster" is a list of inmates within a gang who are considered to be in good standing with the gang. (*Id*.) Being in good standing means that the inmate is currently following the rules and procedures of the gang and is willing to perform tasks for the gang. (*Id*.) The fact that this roster was found among a validated Mexican Mafia associate's possessions, rather than voluntarily submitted by an inmate, provides the requisite indicia of reliability. *See Madrid v. Gomez*, 889 F. Supp. 1146, 1273, n.221 (N.D. Cal. 1995). The second document was a confidential memorandum which included the testimony of a validated gang member who identified plaintiff as an inmate being evaluated for potential gang membership. (*Id*. ¶ 18.) Both documents constitute "some" evidence bearing indicia of reliability. *See Bruce*, 351 F.3d at 1287. Due process requirements were met. Accordingly, defendants' motion for summary judgment as to plaintiff's due process claim is GRANTED.

**B. First Amendment**

Plaintiff claims that defendants violated his First Amendment free association rights by placing him in the SHU because of his involvement with a prison gang. (Compl. ¶ 85.) A prisoner "retains those First Amendment rights [that] are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)). Even then, the Supreme Court has *not* recognized that a prisoner has a First Amendment right to free association. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Similarly, the Ninth Circuit does not recognize a prisoner's constitutional right to receive visits. *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) (en banc). In general, a prison regulation's constitutionality is determined by

whether the regulation is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Under *Turner*, a court may determine the legitimacy of a regulation by examining (1) its connection to a legitimate underlying government interest; (2) whether the constitutional right could be exercised in another manner; (3) what impact the asserted constitutional right will have on the prison; and (4) whether the prison can use alternative measures to accomplish its legitimate penological interests while still preserving prisoners' rights. *Id*. at 89–90.

First, the gang validation process must have a valid connection to the underlying penological interest. As the Supreme Court has noted, internal security is an established legitimate penological interest. *See Overton v. Bazzetta*, 539 U.S. 126, 133 (2003). In prison, gang validation processes allow officials to promote prison safety by identifying and separating gang affiliates from the general population. This demotes gang efficiency, which in turn strengthens the prison's internal security. There exists a valid connection between institutional security and regulations designed to recognize and isolate threats before their potential is realized. *Stewart v. Alameida*, 418 F. Supp. 2d 1154, 1163 (N.D. Cal. 2006). Thus, the process of validating and isolating gang associates is rationally connected to internal security because a decrease in gang activity is indisputably and directly beneficial to a prison's internal security.

Second, this Court may consider whether inmates have other ways to exercise their First Amendment rights. As it is clear that there are other permissible ways to associate with others outside of gang affiliations, this factor weighs in favor of the administration. Plaintiff is free to receive visits from his friends and family, which confirms that he is able to associate freely with others outside of the context of prison gang affiliation. (MSJ at 16.)

The final factors consider how accommodating the asserted constitutional right will impact the prison, and whether the prison may use alternative measures to accomplish its legitimate penological interests. Here, the prison may choose to limit its gang validation procedures for only those gang members who explicitly commit gang-related violence.

Although this would eliminate the uncertainty of a prisoner's gang affiliation, it would also deprive prison officials of the ability to prevent gang violence. Instead, prison officials would be forced to react only to explicit and often harmful acts of gang-related activity. This would unacceptably compromise the safety of prisoners and officials alike, and thus adversely impact the prison. *See Stewart*, 418 F.2d at 1164. Consequently, under *Turner*, gang validation procedures that restrict contact between gang members do not infringe on the inmates' rights to associate freely under the First Amendment because these regulations serve a legitimate penological interest. *Id.* Accordingly, the motion for summary judgment as to plaintiff's First Amendment claims is GRANTED.

**C. Eighth Amendment**

Plaintiff claims that his Eighth Amendment rights have been violated because extended confinement in the SHU "poses a substantial serious risk to plaintiff's well-being" as he has been in the SHU since 1996. (Compl. ¶ 87.) A prison official is deliberately indifferent under the Eighth Amendment if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating the standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060. The Supreme Court has further clarified this standard by holding that "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by [the Eighth Amendment]." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In order to determine if prison conditions were objectively serious enough to be considered cruel and unusual, this Court focuses on discrete and essential human needs including health, safety, food, warmth or exercise. *Madrid*, 889 F. Supp. at 1246.

Plaintiff has not presented evidence precluding summary judgment. His confinement in SHU is not, by itself, sufficient to raise a genuine dispute of fact whether the Eighth Amendment is violated. *See Anderson v. County of Kern*, 45 F.3d 1310, 1315–16 (9th Cir. 1995) (no contact with any other inmate in administrative segregation, either for exercise, day room access or otherwise not cruel and unusual punishment). Plaintiff's generalized contention that his cell is "oppressively hot or cold" is far too vague and undetailed to raise a genuine dispute of material fact. (Compl. ¶ 79.) Moreover, defendants have provided evidence with such specifics. According to their records, the SHU cells had a temperature range of sixty-eight to eighty degrees during plaintiff's confinement. (MSJ, Decl. Puget Ex. A.) In addition, plaintiff receives the same quality of care as other SHU prisoners because he receives exercise, food, health resources, and a plethora of other services that solidify his treatment as permissible under the standard set forth in *Madrid*. (*Id.*, Decl. Maiorino Ex. A; *see Madrid*, 889 F. Supp. at 1246). As plaintiff does not allege anything further than simply being indefinitely confined in SHU, he has not shown evidence that precludes summary judgment. Accordingly, defendants' motion for summary judgment as to plaintiff's Eighth Amendment claim is GRANTED.

**D. Supervisory Liability**

Plaintiff alleges claims of supervisory liability against defendants Lewis, McKinney, and D. Barneburg. Specifically, plaintiff alleges a claim against defendant Lewis as he was warden at Pelican Bay during the time of alleged offenses. (Compl. ¶ 5.) Plaintiff also alleges a claim against defendant McKinney, who interviewed plaintiff regarding his appeal, and defendant Barneburg, who processed plaintiff's validation packet. (*Id*. ¶¶ 9–10.)

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003–04 (9th Cir. 2012). A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular

**United States District Court**
For the Northern District of California

claim — and, more specifically, on the state of mind required by the particular claim — not on a generally applicable concept of supervisory liability. *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012).

Defendants are entitled to summary judgment as a matter of law. First, because plaintiff's claims against the other defendants fail, his claims against their supervisors necessarily fail. Second, plaintiff's conclusory allegations fail to establish that any supervisory defendant had a personal involvement in any alleged deprivation of his constitutional rights, or that there is a causal connection between any defendant and a constitutional violation. Third, plaintiff did not exhaust, as is mandatory prior to filing suit, his administrative remedies against defendant McKinney, whom he did not name in any of the prison grievance appeals he submitted. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); MSJ at 24. His claims against McKinney arise from his July 28, 2010 interview with him. His grievance, however, was filed roughly a month before this interview, specifically on June 22, 2010. The motion for summary judgment as to plaintiff's supervisory liability claims is GRANTED.

**CONCLUSION**

Plaintiff having failed to show that there are triable issues of material fact as to any of his claims, defendants' motion for summary judgment (Docket No. 49) is GRANTED as to all claims against defendants G.D. Lewis, G. Williams, D. Foston, C. Tileston, J.A. McKinney, D. Barneburg and S. Burris.

Plaintiff's motion for clarification on the state of proceedings (Docket No. 76) is DENIED as moot. The Clerk shall enter judgment in favor of all defendants as to all claims, terminate Docket Nos. 49 and 76, and close the file.

**IT IS SO ORDERED**.

DATED: August 4, 2014

RICHARD SEEBORG
United States District Judge